UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| S&F INVESTMENTS, LLC, A&V PETROLEUM, LLC and FADI QUMBARGI<br>*Plaintiffs*,<br><br>v.<br><br>ALLIANCE ENERGY, LLC<br><br>*Defendant*. | Civil No. 3:21cv1577 (JBA)<br><br>July 29, 2022 |

**ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs A&V Petroleum LLC ("A&V"), S&F Investments, LLC, and Fadi Qumbargi own a gas station at 83 Federal Road in Brookfield, Connecticut and are supplied with Mobil-branded fuel from Defendant Alliance Energy, LLC. Plaintiffs instituted this action against Defendant, seeking preliminary injunctive relief under the Petroleum Marketing Practices Act ("PMPA") to enjoin Defendant from terminating their franchise. (Pls.' Mem. in Supp. of App. for Temp. Injunction [Doc. #2-5] at 3.) Defendant opposes [Doc. # 16], but stipulates that it will not terminate Plaintiffs' franchise pending the Court's adjudication of their motion [Doc. # 15].

Defendant predicates termination of Plaintiffs' franchise on the conduct of Plaintiffs' franchisee, Lucky U, LLC ("Lucky U"). The parties have stipulated that Lucky U (1) purchased and sold unbranded motor fuel, (2) covered signs displaying the Mobil trademark, and (3) diverted credit and debit card purchases from the ExxonMobil credit card system. (Alliance Energy LLC's Mem. of L. in Opp'n to Pls.' Emergency Application for Temp. Inj. ("Def.'s Opp'n") [Doc. # 16] at 2.) The narrow question before the Court is whether Defendant can effectuate termination of Plaintiffs' franchise under the PMPA based upon the conduct of

Plaintiffs' franchisee. For the reasons that follow, the Court DENIES Plaintiffs' motion for a preliminary injunction.

## I. Stipulated Facts

The parties have stipulated to the following facts. Plaintiff A&V and Defendant entered into a Fuel Supply Agreement on January 6, 2017 for the sale of Mobil-branded gasoline at 83 Federal Road, Brookfield, Connecticut ("the Premises"). (Joint Stmt. of Facts ("SOF") [Doc. # 17] ¶¶ 8-11.) The Supply Agreement purports to create a petroleum marketing franchise. (*Id.* ¶ 9.) Under the agreement, Plaintiff A&V must purchase and sell Mobil-branded gasoline, display Mobil's "identifying marks," and comply with Defendant's credit card instructions and regulations. (*Id.* ¶¶ 11-17.) It also establishes that Plaintiff A&V "is an independent business person and is solely responsible for the hiring, discharge, compensation, management, control and work rules of all personnel used or employed by or on behalf of [A&V] in connection with its business." (*Id.* ¶ 20.) In August of 2019, Plaintiff A&V executed a separate Lease and Fuel Supply Agreement with Lucky U for the sale of gasoline at the Premises, but Defendant is not a party to that Lease and Fuel Supply Agreement. (*Id.* ¶ 23.) Thus, Plaintiff A&V is both a franchisor to Lucky U and a franchisee to Defendant.

Around October 15, 2021, Plaintiff A&V determined that Lucky U had diverted its credit card transactions from Defendant's authorized system to an "unknown destination," with the last credit card transaction passing through the authorized system on October 17, 2021. (*Id.* ¶¶ 29-30.) Then, on October 28, 2021, Lucky U bought unbranded Mobil fuel for resale at the Premises, which it sold while displaying Mobil trademarks. (*Id.* ¶¶ 35, 47, 55.) Lucky U also covered up some of Mobil trademarks with spray paint and displayed the name "Anu Fuel." (*Id.* ¶ 58.) Based upon Lucky U's conduct, Plaintiff A&V issued a notice of

termination to Lucky U on October 15, 2021 and filed an emergency application for injunctive relief in federal court.[1]

This was not Plaintiffs' first attempt to remove Lucky U from the Premises. Previously, on July 1, 2021, Plaintiffs issued a notice of termination to Lucky U, alleging that Lucky U failed to purchase its minimum annual gallons, neglected to implement a required "EMV upgrade," and violated the law by failing to properly secure the gas dispensers after the close of business. (July 1 Letter, Ex. 12 [Doc. # 17-2] at 51-52.) It also brought a summary process action in state court, seeking to terminate Lucky U's tenancy. (SOF ¶¶ 32-33.)

Defendant issued a notice of termination to Plaintiff A&V on November 11, 2021 citing Lucky U's breaches. (*Id.* ¶¶ 32, 72.) Defendant's termination of Plaintiff A&V's franchise was to take effect on December 1, 2021 but is stayed during the pendency of this motion. (*Id.* ¶ 72.) Defendant also issued a notice to Plaintiffs advising them that their breach of the Supply Agreement "triggered a series of related defaults" to the parties' "Mortgage and Security Agreement and Financing Statement," "Open End Mortgage and Security Agreement and Financing Statement," and "Promissory Note." (*Id.* ¶ 74.) Defendant informed Plaintiff A&V that these defaults accelerated its payment obligations. (*Id.*)

## II. Legal Standard

The PMPA creates a marriage between franchisors and franchisees—it prohibits the termination of a franchise except upon certain enumerated grounds. 15 U.S.C. § 2802 ("Except as provided in subsection (b) and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may . . . terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term."); *see Brach v. Amoco Oil Co.*, 677 F.3d 1213, 1220 (7th Cir. 1982). Where a franchisor

---

[1] In that case, the Court concluded that Plaintiff A&V's termination of Lucky U's franchise was proper under the PMPA and preliminarily enjoined Lucky U from entering the Premises. *See Lucky U, LLC v. S&F Investments,* LLC, No. 21-cv-931(JBA), 2022 WL 105192 (D. Conn. Jan. 11, 2022).

seeks to improperly dissolve this marriage, the PMPA provides the franchisee with enforcement rights, including preliminary injunctive relief. *See* 15 U.S.C. § 2805. The statute states:

> the court shall grant a preliminary injunction if—
>
> (A) the franchisee shows—
>
> > (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
> >
> > (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

*Id.* § 2805(b)(2).

The standard for granting preliminary relief under § 2805 of the PMPA is more relaxed than the standard under Rule 65 of the Federal Rules of Civil Procedure. *Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54, 56 (2d Cir. 1984) ("[I]t is easier for a franchisee to obtain a preliminary injunction under the PMPA than in the usual case."). "In contrast to Rule 65, 'which requires a movant to show a strong or reasonable likelihood of success, the PMPA requires only that a franchisee show a *reasonable chance of success* on the merits.'" *Nassau Blvd Shell Service Station, Inc. v. Shell Oil Co.*, 875 F.2d 359, 363 (2d Cir. 1989) (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984), cert. denied, 469 U.S. 982 (1984)).

### III. Discussion

#### A. Sufficiently Serious Question on the Merits

Defendant bases the termination of Plaintiffs' franchise upon two sections of the PMPA: § 2802(b)(2)(A) and § 2802(b)(2)(C). Section 2802(b)(2)(A) states that a franchisor may terminate a franchise for the "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise

4

relationship," but excludes "any failure for a cause beyond the reasonable control of the franchisee." 15 U.S.C. § 2801(13)(B). Section 2802(b)(2)(C) allows for termination on the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable," including "events such as . . . willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee." 15 U.S.C. § 2802(c)(10).

The parties do not dispute that the PMPA applies to their Supply Agreement or that Defendant seeks to terminate Plaintiff A&V's franchise. (SOF ¶¶ 9, 72-74.) Plaintiff A&V does not dispute that Defendant properly effectuated termination and complied with the notice requirements of 15 U.S.C. § 2804(c) and 15 U.S.C. § 2804(b)(1). (Def.'s Opp'n at 18.) Nor does Plaintiff A&V dispute that the conduct at issue could lead to termination; in fact, Plaintiff A&V predicated termination of Lucky U's franchise upon the same conduct. (*See* SOF ¶ 33); *Lucky U, LLC*, 2022 WL 105192 at *3-4. Plaintiffs argue only that Lucky U's conduct was beyond their "reasonable control" and they did not *willfully* misbrand motor fuel. (Reply [Doc. #18] at 7.)

Turning first to § 2802(b)(2)(A), Plaintiffs assert that they took "every action within their 'reasonable control'—short of self-help—to stop, prevent, and mitigate the renegade tenant, Lucky U's breaches." (Pls.' Mem. in Supp. of App. for Temp. Inj. ("Pls.' Mem.") [Doc. # 2-5] at 8.) They note that they issued a PMPA notice of termination to Lucky U, brought a summary process action against Lucky U in Connecticut Superior Court, and filed for injunctive relief in federal district court. (*Id.* at 2.) In response, Defendant points to § 16 of the Supply Agreement which states that Plaintiff A&V "is an Independent business person and is solely responsible for the hiring, discharge, compensation, management, control and work rules of all personnel used or employed by or on behalf of Dealer in connection with its business." (Def.'s Opp'n at 20.)

5

Congress enacted the PMPA "to establish 'protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.'" *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2d Cir. 1986) (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 15). "The PMPA is primarily concerned with attempts by franchisors to discriminate against a particular franchisee or to extract an unfair concession based upon the franchisor's superior bargaining power." *King Serv., Inc. v. Gulf Oil Corp.*, 834 F.2d 290, 294 (2d Cir. 1987); *see also Roberts v. Amoco Oil Co.*, 740 F.2d 602, 605 (8th Cir. 1984) ("Congress intended the PMPA to address th[e] disparity in bargaining power" between franchisors and franchisees) (citing S.Rep. No. 95-731, 95th Cong., 2d Sess. 17-19)). But, at the same time, "Congress also fully accepted that 'this subject area requires recognition of the legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship based on certain actions of the franchisee.'" *Kajdan v. Exxon Co., USA*, No. H-80-126, 1980 WL 1816, at * 4 (D. Conn. Mar. 14, 1980) (quoting S. Rept. No. 95-731, 95th Cong., 2d Sess. 15)).

When a provision in a franchise agreement places a requirement on the operation of the franchise, and the standard is not met, then "the [franchisee] has failed his obligation under the . . . agreement whether the [franchisee] or his employees are directly responsible, unless the breach was beyond his 'reasonable control.'" *Chevron U.S.A., Inc. v. Lutz*, 271 F. Supp. 2d 1196, 1203 (N.D. Ca. 2003). The PMPA's exception for causes "beyond the reasonable control" of a franchisee account for "unforeseen circumstances [which] may impede compliance" with a contractual obligation, *Brach*, 677 F.2d at 1224 n.16, or a *franchisor's* unreasonable conduct, *see Roberts*, 740 F.2d at 608 (remanding a case for trial to determine whether the franchisor's bad faith offer of sale caused the franchisee to vacate the premises "for a cause beyond [his] reasonable control"); *see also Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08Civ.7956(PKC), 2013 WL 395096, at * 10 (S.D.N.Y. Feb. 1, 2013) (noting that while "general economic hardship" is not a circumstance beyond a franchisee's "reasonable control," there is "some support for the proposition that a

6

franchisor's conduct can render a franchisee's failure beyond his reasonable control.").[2] But a failure that is caused by the "ineptitude and malfeasance" of an employee is not one beyond a franchisee's reasonable control because the selection of "employees and *business associates*" is "wholly within [the] control" of the franchisee. *Potter v. Ashland Oil, Inc.*, No. 89-6045, 905 F.2d 1538 (Table), 1990 WL 86467, at *1 (6th Cir. June 20, 1990) ("It was not unreasonable for [the franchisor] to terminate [the] franchise when [the franchisee] did not exercise that control effectively.") (emphasis added).

Lucky U is Plaintiff A&V's franchisee, not its employee. (SOF ¶ ¶ 22-24); *see also Lucky U, LLC*, at *6. But the reasoning in *Potter* applies to this case. The Supply Agreement establishes that Plaintiff A&V "is solely responsible for the . . . control and work rules of all personnel used or employed by or on behalf of [A&V] in connection with its business," (SOF ¶ 20), and Plaintiff A&V entered into a franchise relationship with Lucky U for the sale of gasoline at the Premises—a service in connection with Plaintiff A&V's business. (*Id.* ¶ 22; *see also* Lucky U Agreement of Lease, Ex. 7 [Doc. # 17-2] at 2-18; Lucky U Fuel Supply Agreement, Ex. 8 [Doc. #17-2] at 20-34.) Plaintiffs exercised their control by leasing the Premises to Lucky U and allowing Lucky U to sell gasoline at the Premises. They made this decision subsequent to their agreement with Defendant that Plaintiffs would be responsible for controlling the personnel used on their behalf. (*See* SOF ¶¶ 21-22.) Further, Plaintiffs failed to exercise their control effectively to stop Lucky U's breaches. While Plaintiffs sought to remove Lucky U from the Premises through notices of termination and court proceedings, they waited for over three months between their initial notice of termination and their subsequent notice of termination and began, but withdrew, their state court action before ultimately bringing counterclaims in federal court. (*Id.* ¶¶ 32-33.) Against this backdrop,

---

[2] The Second Circuit has yet to address the definition of "failure" and what will be excluded as beyond the reasonable control of a franchisee under the PMPA. *Gun Hill Rd. Serv. Station, Inc.*, 2013 WL 395096, at * 10.

Plaintiffs have not demonstrated that the acts of Lucky U were beyond their reasonable control.

This conclusion is reinforced by Congress's intent. As noted by the Eighth Circuit, "Congress explicitly addressed" the imbalance of bargaining power between franchisors and franchisees "by insuring that a franchisee would not suffer a franchise termination due to an event or cause beyond his or her reasonable control." *Roberts*, 740 F.2d at 608. Here, it is not the act of the *franchisor* rendering Plaintiffs' failure beyond their control. Rather, it is the act of Plaintiffs' *franchisee*—an entity with even less bargaining power than Plaintiff—that caused Plaintiff's breaches. The intent of Congress is not met by allowing Plaintiffs to seek refuge under the PMPA's exclusion for failures beyond a franchisee's reasonable control.

Plaintiffs' arguments to the contrary are unpersuasive. They assert that *Potter* is inapposite because it did not involve a franchisor/franchisee relationship, and did not detail the particular "ineptitude and malfeasance" of the franchisee's employees. (Reply at 6.) While the Court acknowledges that *Potter* involved an employee/employer relationship, it is appropriate to borrow from the Sixth Circuit's reasoning because Plaintiffs chose Lucky U as a franchisee in the same way an employer may choose an employee. Plaintiffs also contend that the PMPA does not allow for "either strict liability or vicarious liability." (Reply at 2-3.) The PMPA, however, allows for the termination of a franchise when a franchisee fails to comply with its contract, § 2802(b)(2)(A), and Plaintiffs entered a contract for the sale of Mobil-branded gasoline at the Premises and allowed unbranded gasoline to be sold on its Premises. The PMPA does not absolve Plaintiffs of their obligations where their franchisee sold misbranded motor fuel on the Premises. Under these circumstances, the breaches at the Premises are attributable to Plaintiffs.

Because Lucky U's actions were not outside of Plaintiffs' reasonable control, the Court concludes that there are no "sufficiently serious questions going to the merits to make such questions a fair ground for litigation" as to Defendant's termination of Plaintiffs' PMPA

franchise under 15 U.S.C. § 2802(b)(2)(A). As discussed, the PMPA allows for the termination of a franchise for the "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship," *id.*, and the Second Circuit has concluded that "passing off" non-Mobil gasoline as Mobil gasoline is grounds for termination because it is a breach which is "'reasonable' and 'material' within the meaning of 15 U.S.C. § 2802(b)(2)(A)." *Wisser Co., Inc.*, 730 F.2d at 57. Here, unbranded motor fuel was sold to the public under a Mobil trademark, and thus, on this basis alone, Defendant may permissibly terminate Plaintiff's franchise under § 2802(b)(2)(A).[3] It is unnecessary for the Court to consider Plaintiffs' arguments that termination is improper under § 2802(b)(2)(C).[4]

---

[3] Defendant also satisfied 15 U.S.C. § 2802(b)(1)(A)(ii), allowing for termination "if the franchisor first acquired actual or constructive knowledge of [the] failure . . . not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given." Defendant learned of the sale of unbranded motor fuel on October 28, 2021 and issued a notice of termination to Plaintiff A&V to November 11, 2021 (SOF ¶¶ 35-36, 72), within the required sixty-day window.

[4] Plaintiffs do not dispute that Defendant gave proper notice under the PMPA. The PMPA requires that a franchisee be given written notice with "a statement of intention to terminate the franchise . . . together with the reasons therefor," the date of termination, and a statutory summary informing the franchisee of responsibilities, remedies, and relief available to the parties. 15 U.S.C. § 2804(c). The notice must be given to the franchisee by personal delivery or certified mail. *Id.*

The parties stipulated that Defendant posted by certified mail a PMPA termination notice detailing the termination date, the reasons for termination, and a statutory summary. (SOF ¶ 72-73; Notice of Termination, Ex. 19 [Doc. #17-4] at 4-19.) Further, while ninety days' notice of termination is typically required, § 2804(a)(2), less than ninety days' notice is acceptable when "it would not be reasonable," *id.* § 2804(b)(1)(A). The Second Circuit concluded that a franchisor may give less than ninety days' notice if a franchisee is engaged in the sale of misbranded motor fuel. *Wisser Co., Inc.*, 730 F.2d at 60 ("The legislative history and hearings, however, indicate that § 2804(b)(1)(A) was added to dispense with the lengthy notice requirement where, for example, a franchisee committed serious defaults of the franchise agreement, such as misbranding."). As such, the Court concludes that Defendant gave proper notice of termination under the PMPA.

### B. Balance of the Hardships

Because Plaintiffs have not raised any "sufficiently serious questions going to the merits to make such questions a fair ground for litigation," they are not entitled to a preliminary injunction "regardless of the relative hardships." *Wisser Co., Inc.*, 730 F.2d at 61; *see also Nassau Blvd. Shell Serv. Station, Inc. v. Shell Oil Co.*, 875 F. 2d 359, 363 (2d Cir. 1989) ("[I]t is unnecessary for us to resolve whether the district court improperly [conflated the balance of the hardships and] irreparable harm because plaintiffs did not raise 'sufficiently serious questions going to the merits' as required by section 2805(b)(2)(A)(ii)."). As such, the Court will not balance the hardships faced by the parties.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion [Doc. # 2] for a preliminary injunction is DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of July 2022.